UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

KENNETH GIBBS,

        Plaintiff,

    v.                                                                          CAUSE NO.: 3:19-CV-664-TLS-MGG

ANDREW M. SAUL, Commissioner of the
Social Security Administration,

        Defendant.

**OPINION AND ORDER**

This matter is before the Court on the Report and Recommendation of the United States Magistrate Judge [ECF No. 19], filed by Magistrate Judge Michael G. Gotsch, Sr. on September 16, 2020. In March 2016, the Plaintiff filed an application for disability insurance benefits, alleging disability beginning on February 4, 2016. AR 183, ECF No. 11. The claims were denied initially and on reconsideration. *Id*. at 122,126. The Plaintiff requested a hearing, which was held before the Administrative Law Judge (ALJ) on August 23, 2018. *Id*. at 11, 132, 148. On September 26, 2018, the ALJ issued a written decision and found the Plaintiff not disabled. *Id.* at 11–21. On August 22, 2019, the Plaintiff filed a Complaint [ECF No. 1] appealing the final administrative decision denying his request for disability benefits. The Plaintiff filed an Opening Brief [ECF No. 16], the Defendant filed a Response [ECF No. 17], and the Plaintiff filed a Reply [ECF No. 18]. On November 7, 2019, this matter was referred to Judge Gotsch for a Report and Recommendation. *See* Order, ECF No. 12. In the September 16, 2020 Report and Recommendation, Judge Gotsch recommends that the Court affirm the decision of the Commissioner of the Social Security Administration.

The Court's review of a Magistrate Judge's Report and Recommendation is governed by 28 U.S.C. § 636(b)(1)(C), which provides as follows:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(2) ("Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations."). Portions of a recommendation to which no party objects are reviewed for clear error. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). Judge Gotsch gave the parties notice that they had fourteen days to file objections to the Report and Recommendation. On September 29, 2020, the Plaintiff filed an Objection [ECF No. 20]. The Defendant did not file a response to the Objection, and the time to do so has passed.

## THE ALJ'S DECISION

For purposes of disability insurance benefits and supplemental security income, a claimant is "disabled" if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). To be found disabled, a claimant must have a severe physical or mental impairment that prevents him from doing not only his previous work, but also any other kind of gainful employment that exists in

2

the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i), (b). In this case, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since February 4, 2016, the alleged onset date. AR 13. At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii), (c). Here, the ALJ determined that the Plaintiff has the severe impairments of diabetes mellitus with mild neuropathy, pancreatitis, and chronic liver disease. AR 13. Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings in appendix 1 to subpart P of part 404 of this chapter." 20 C.F.R. § 404.1520(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled without considering age, education, and work experience. *Id*. § 404.1520(a)(4)(iii), (d). The ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing, indicating that she considered Listings 5.00/5.05 and 9.00. AR 14–15.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1520(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant is capable of lifting twenty pounds occasionally, lift and or carry ten pounds frequently, stand and or walk for about

>six hours, and sit for about six hours in an eight hour workday with normal breaks; capable of no more than occasionally balancing, stooping, kneeling, crouching, crawling and climbing ramps and stairs, but cannot climb ladders, ropes or scaffolds. Additionally, the claimant can use foot controls no more than occasionally. The claimant's work may require no exposure to hazardous moving machinery, unprotected heights, open flames or large bodies of water, and have not more [than] occasional exposure to excessive vibration. The claimant's work must not require driving to perform the functions of the job. Also, the claimant's work must be limited to simple, routine, and repetitive tasks (i.e., no complex written or verbal communications), simple work related decisions and no more than occasional, routine workplace changes. The claimant's work may not require fast-paced production, tandem tasks, or teamwork. Finally, the claimant must be allowed to alternate between sitting and standing for 1–2 minutes every 45 minutes.

AR 15.

The ALJ then moves to step four and determines whether the claimant can do his past relevant work in light of the RFC. 20 C.F.R. § 404.1520(a)(4)(iv), (f). In this case, the ALJ found that the Plaintiff is unable to perform any past relevant work under 20 C.F.R. § 404.1565. AR 19. If the claimant is unable to perform past relevant work, the ALJ considers at step five whether the claimant can "make an adjustment to other work" in the national economy given the RFC and the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v), (g). Here, the ALJ found that the Plaintiff is not disabled because the Plaintiff can perform significant jobs in the national economy of mail clerk, office machine operator, and information clerk. AR 20. The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1512.

The Plaintiff sought review of the ALJ's decision by the Appeals Council, and the Appeals Council subsequently denied review. AR 1, 87. Thus, the ALJ's decision is the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). The Plaintiff now seeks judicial review under 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539 (quotations omitted); *see also Moore*, 743 F.3d at 1121 ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate

and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (internal citations omitted). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

## ANALYSIS

In his appeal, the Plaintiff seeks reversal of the ALJ's decision, arguing that substantial evidence does not support the RFC for a limited range of light work in relation to his pain and his ability to stand and/or walk for six hours in an eight-hour workday, that substantial evidence does not support the ALJ's decision at step five, and that the ALJ denied him the right to fully question the vocational expert. The Magistrate Judge recommends affirming the ALJ's decision on the basis that substantial evidence supports the ALJ's decision on the RFC and at step five and that there was no reversible error regarding the Plaintiff's ability to question the vocational expert. The Plaintiff objects to all three findings by the Magistrate Judge. Accordingly, the Court considers the Plaintiff's arguments de novo.

**A.     Residual Functional Capacity**

The Residual Functional Capacity (RFC) is a measure of what an individual can do despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004); 20 C.F.R. § 404.1545(a). The determination of a claimant's RFC is a legal decision rather than a medical one. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995); *see also Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)). "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting

on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id*. at *3.

The relevant evidence includes medical history; medical signs and laboratory findings; the effects of treatment; reports of daily activities; lay evidence; recorded observations; medical source statements; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*.

The Plaintiff argues that the ALJ made several errors in assessing the medical records such that substantial evidence does not support the RFC for a limited range of light work related to his abdominal pain and neuropathy and his ability to stand and/or walk for six hours in an eight-hour workday. Although not all of the Plaintiff's arguments are well taken, the ALJ's failure to discuss evidence favorable to the Plaintiff's claim of disability requires remand for the ALJ to create a logical bridge between the evidence and the finding of no disability.

1.   *Favorable Evidence*

The Plaintiff criticizes the ALJ's reliance on evidence that treatment had stabilized the Plaintiff's pancreatic cysts and that the cysts "even became smaller." AR 16. Although the Plaintiff agrees that the size of the cysts stabilized, Pl.'s Br. 20, ECF No. 16 (citing AR 1307 (2/27/2018), 1535 (7/16/2018)), he argues that there is no evidence that the smaller, stable cysts improved his pain, his diabetes, or his neuropathy. Rather, he contends that he still required pain

7

management and had ongoing, severe neuropathy pain after the size of his cysts stabilized. *See id.* (citing AR 1543–46 (Ex. 27F, 7/23/2018), 1537–39 (Ex. 26F, 7/30/2018)).

Under the heading "Objective Findings" in the RFC analysis, the ALJ correctly summarized that the cysts had stabilized and reduced in size following surgery. AR 16. However, in the subsequent "Clinical Findings" section, the ALJ's chronological summary of the evidence, including before and after the surgery, leaves the impression that the Plaintiff's pain improved following the surgery such that the Plaintiff no longer had constant pain or difficulty walking. *See id.* at 17–18. Such a conclusion is not supported by substantial evidence.

The ALJ summarized the pre-surgery records of the Plaintiff's pancreatitis in 2016. The ALJ then writes that Dr. Lybik, the Plaintiff's gastroenterologist, was able to complete the stenting of the Plaintiff pancreatic pseudocysts on November 7, 2016, after which the Plaintiff's "abdominal pain is intermittent at worst." *Id.* at 18; *see also id.* 1323 (19F, 11/7/2016). This statement that the Plaintiff's "abdominal pain is intermittent at worst" implies that there are periods in which the Plaintiff has no pain at all. The ALJ cites no records in support of this statement, and the medical records contradict the statement. Dr. Lybik's 2017 records include the Plaintiff's reports of "persistent" pain and "moderate sharp pain" as well as nausea. *See id.* at 1308 (19F, 2/7/2018), 1315 (19F, 5/9/2017). The May 9, 2017 and February 7, 2018 records report the following as to the pancreatic cysts: "Appear to be stable by CT scans. Still with pain and nausea. Uses hydrocodone and [Z]ofran and [P]henergan for this with mild relief." *Id.* at 1308, 1315. Additional records through 2018, discussed in more detail below, contain the Plaintiff's report of the "pattern of pain as constant with intermittent flare ups." *See, e.g.*, *id.* at 1403 (Ex. 22F, 6/14/2018, Dr. Qavi). Finally, in the same paragraph of the decision, the ALJ again repeats the objective findings that "the pseudocysts are smaller and are considered stable,"

*id.* at 18 (citing Ex. 19F), but fails to cite the portions of the same records that the Plaintiff still has pain and nausea. *See id.* at 1315 (5/9/2017).

In the next paragraph, the ALJ discusses the Plaintiff's ongoing medical care into the summer of 2018 but omits any discussion of the Plaintiff's ongoing complaints of or treatment for pain in those records. First, the ALJ comments generally that the Plaintiff "has on-going treatment with pain specialist, Dr. Qavi, and his primary care physician, Dr. Kennedy well into the summer of 2018." *Id.* at 18. The ALJ then notes the treatment by Dr. Kennedy of several benign conditions throughout the time period. *Id.* Finally, the third sentence of the paragraph provides that the Plaintiff "has indicated pain in both feet, but I did not note an inability to ambulate or even use of an assistive device." *Id.* (citing AR 1344–83 (Ex 21F at 4–43, Dr. Kennedy), 1399–1510 (Ex. 22F, Lafayette Pain Care records through 7/5/2018)).

A review of the records cited—but not discussed—by the ALJ shows the following reports of uncontrolled pain through the summer of 2018. On June 14, 2018, the Plaintiff described to Dr. Qavi his "pattern of pain as constant with intermittent flare ups." *Id.* at 1403 (Ex. 22F7, 6/14/2018, Dr. Qavi). The Plaintiff explained that the quality of the pain was "dull, throbbing, sharp at times, and aching." *Id*. The Plaintiff rated the pain on a 10-point scale as 10 out of 10 at its worst and 4 out of 10 at its least, with an average of 6 or 7 out of 10 depending on the day and the level of physical activity. *Id*. The Plaintiff described worsening factors of increased physical activity, bending over, and weather and pressure changes. *Id.* The Plaintiff reported "relieving factors" of "stopping activities that aggravate pain, adequate rest, and taking pain medications." *Id*. A celiac plexus block was scheduled for three weeks later. *Id.* at 1405. On July 5, 2018, presenting for the celiac plexus block, the Plaintiff reported "persistent abdominal pain that is *not controlled*." *Id.* at 1399 (Ex. 22F3, 7/5/2018, Dr. Qavi) (emphasis added). The

ALJ does not discuss any of these records. And, the ALJ does not cite Dr. Qavi's July 30, 2018 record, in which the Plaintiff reported that the celiac plexus block gave him 90% relief for three days before the pain returned. *Id.* at 1537–39 (26F, 7/30/2018, Dr. Qavi). The Plaintiff again described his pain as "constant with intermittent flareups," provided the same pain scale rating as in June 2018, and again provided similar pain-related worsening and relieving factors. *Id.* at 1537. On review of systems, the Plaintiff reported abdominal pain and nausea. *Id.* at 1538.

In addition, from April 2016 well into 2018, the Plaintiff's treating physicians consistently found that his gait and station were antalgic, which the Plaintiff sets out in detail in the factual background of his brief. *See* Pl.'s Br. 8–17 (citing AR 1074 (4/18/2016), 1066 (5/2/2016), 1056 (6/28/2016), 1043–44 (7/12/2016), 1051 (7/26/2016), 1508 (8/30/2016), 1498 (10/25/2016), 1486 (12/21/2016), 1482 (1/26/2017), 1478 (3/24/2017) (antalgic and guarded), 1473 (4/24/2017), 1466 (5/3/2017), 1459 (6/22/2017), 1454 (7/18/2017), 1426 (2/5/2018), 1420 (3/16/2018), 1415 (4/20/2018)). The ALJ does not mention any of these findings or explain how they are inconsistent with the Plaintiff's subjective complaints of pain.

The ALJ's comment that the "claimant has indicated pain in both feet, but I did not note an inability to ambulate or even use of an assistive device," AR 18, considers only the most extreme functional limitation (inability to ambulate) without acknowledging the records above that may be consistent with a lesser but nevertheless disabling degree of impairment in the ability to walk and stand for long periods of time. And, the exhibits cited by the ALJ for showing no "inability to ambulate" or need for a cane, Ex. 21F at 4–43 and Ex. 22F, contain many of the treatment records showing a consistently antalgic gait and station. *See* AR 1409, 1415, 1426, 1438, 1454.

The Plaintiff, citing *Israel v. Colvin*, 840 F.3d 432, 439 (7th Cir. 2016), argues that the ALJ committed harmful error by interpreting medical evidence to conclude that the findings on the CT scan would relate to improvement in symptomatology. In *Israel*, the Seventh Circuit Court of Appeals ruled that it was improper for an adjudicator, whether a district court judge or an ALJ, to interpret medical reports, like the MRI results at issue in that case, without any medical opinion supporting that interpretation. 840 F.3d at 439 (citing *Browning v. Colvin*, 766 F.3d 702, 705 (7th Cir. 2014) (noting that ALJs are not permitted to "play doctor")). Although the ALJ in this case did not explicitly conclude that the Plaintiff's pain had resolved based on the CT scan results, as discussed above, the ALJ's reasoning leaves that impression based on the discussion of only the favorable evidence. Like in *Israel*, no physician in the record has opined on whether the CT results are inconsistent with the Plaintiff's claims of constant abdominal pain that affects his ability to stand and/or walk for long periods of time. *See Israel*, 840 F.3d at 440.

Although the ALJ is not required to address every piece of evidence or testimony presented, the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837 (internal citations omitted). And, an ALJ may not discuss only the evidence that supports her conclusion while ignoring contrary evidence. *See Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016) (citing *Moore*, 743 F.3d at 1124; *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013)); *see also Cole v. Colvin*, 831 F.3d 411, 416 (7th Cir. 2016) (citing *Price v. Colvin*, 794 F.3d 836, 839–40 (7th Cir. 2015); *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014); *Bates*, 736 F.3d at 1099). By discussing only the evidence that supports the RFC, the ALJ leaves the impression that the Plaintiff's pain became less severe and only "intermittent" after the surgical intervention reduced the size of his

pancreatic cysts. However, the evidence of record set forth above supports the Plaintiff's allegations that his pain remained constant and affected his ability to walk and stand. Because of the ALJ's selective discussion of the records, the Court cannot trace the path of the ALJ's reasoning and cannot find that the decision is supported by substantial evidence. The Court is not reweighing the evidence but rather is requiring the ALJ to properly weigh the evidence in the first instance. Remand is required for consideration of this evidence.

2.     *SSR 16-3p—Allegations of Pain*

The Plaintiff argues that the ALJ did not properly consider his pain under the standard set out in Social Security Ruling 16-3p, 2017 WL 5180304 (Oct. 25, 2017). In the decision, the ALJ articulated the two-part test in SSR 16-3p for considering a claimant's symptoms, including pain. AR 15–16 (citing SSR 16-3p). First, the ALJ must consider whether the claimant has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms, such as pain. SSR 16-3p, 2017 WL 5180304, at *3. Here, the ALJ found that the Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, noting the Plaintiff's chronic abdominal pain from pancreatitis and the pain in his feet from neuropathy. AR 16. Second, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . . ." SSR 16-3p, 2017 WL 5180304, at *3. Under the second step, the ALJ found that the Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 16. However, this finding is not supported by substantial evidence.

In addition to ignoring records of the Plaintiff's constant (rather than intermittent) pain and the findings of antalgic gait and station, the ALJ also misstates the records regarding how the Plaintiff controls his pain. The ALJ notes that the Plaintiff told his pain management physician, Dr. Qavi, that his "pain is manageable with the medications he is prescribed." *Id.* at 18 (citing Ex. 11F). The ALJ notes this statement only from pre-surgery visits in 2016, although the same statement is in the post-surgery records as well. *Compare id.* at 1059 (11F13, 6/2/2016), 1051 (11F5, 7/26/2016), and 1065–1067 (11F19 5/2/2016), *with id.* at 1403 (22F7 6/14/2018). More importantly, as argued by the Plaintiff, the Plaintiff reported, both before and after his surgery, that his pain is manageable with *both* pain medications as well as "activity modification." *Id.* 1403, 1051,1059, 1065. By mentioning only the use of pain medication, the ALJ did not address the role of activity modification in the Plaintiff's pain management or on his ability to perform the requirements of light work. On June 2, 2016, the Plaintiff told Dr. Qavi that his pain worsens with "increased physical activity, bending over, sitting or standing for a long time, weather and pressure changes, and sometimes for no particular reason." *Id.* at 1059. On June 14, 2018, the Plaintiff reported that his pain worsened with increased physical activity, bending over, weather and pressure changes, and sometime for no particular reason. *Id.* at 1403. On both dates, he reported that he relieves his symptoms by "stopping activities that aggravate pain, adequate rest, and taking pain medications." *Id.* at 1059, 1403.

The ALJ's failure to discuss the Plaintiff's need for activity modification as part of managing his pain means that the Court cannot ascertain to what extent, if at all, the ALJ modified the exertional limitations of the RFC to accommodate this aspect of his pain management. More importantly to the Plaintiff's argument in this appeal, the Court cannot tell if the ALJ accounted for the need to modify activity in finding that the Plaintiff can stand and/or

13

walk for six hours in an eight-hour workday. The Court recognizes that the RFC includes several postural limitations, including being allowed to alternate between sitting and standing for 1–2 minutes every 45 minutes, but the ALJ does not explain why she included any of the specific postural limitations in relation to the evidence. *See id.* at 18. Again, although an ALJ is not required to discuss every piece of evidence related to pain in the record, *see Craft*, 539 F.3d at 673, she is required to discuss the favorable evidence, *see Meuser*, 838 F.3d at 912. Remand is required for the ALJ to consider the Plaintiff's need to modify activities as a form of pain management.

*3.     Dr. Kennedy's MSS—Concentration and Attention*

The Plaintiff notes that Dr. Kennedy, his treating physician, wrote a medical opinion statement on July 16, 2018, stating that the Plaintiff's pain would interfere with his concentration and attention frequently to constantly. Pl. Br. 21 (citing AR 1516–19 (Ex. 24F)). In the "Opinion Evidence" section of the decision, the ALJ weighed Dr. Kennedy's opinions and only give them some weight, *see* AR 19, and the Plaintiff does not contest the weight given to the opinions. Moreover, as noted by the Commissioner, Dr. Kennedy's examination records do not document difficulties with attention or concentration, *see id.* at 940–51, 1080, 1087, 1344–96, and Dr. Kennedy noted during the consultative examination that the Plaintiff's concentration was "good," *id.* at 1044. However, an ability to concentrate and pay attention during a routine physical examination may be a different consideration than the ability to contrate throughout a workday with constant abdominal pain. Although this is not a basis for remand, the ALJ will have an opportunity on remand to consider this aspect of Dr. Kennedy's July 16, 2018 opinion.

*4.     EMG*

The Plaintiff argues that the ALJ "interpreted" the records regarding an EMG result to suggest the Plaintiff's condition is less severe. This argument is misplaced as the ALJ's description of the EMG is taken directly from the treating neurologist's records. The ALJ wrote that the EMG "did document the claimant's mild to moderate left peroneal motor mononeuropathy, but did not show any electrophysiologic evidence of polyneuropathy of the lower extremities." *Id.* at 16 (citing AR 1526 (Ex. 25F7)/1543 (Ex. 27F3),[1] 1631 (Ex. 30F8)). The treating neurologist noted both the "moderate axonal left peroneal motor mononeuropathy" and that the EMG "did not show any electrophysiologic evidence of a polyneuropathy of the lower extremities at this time." *Id.* at 1526 (Ex. 25F7, 6/18/2018), 1543 (Ex. 27F3, 7/23/2018). The only difference between the statements is the ALJ's use of the words "mild to moderate" rather than simply "moderate." However, in addition to citing the neurologist's statement, the ALJ also cites the Plaintiff's report to a treating provider that he "had an EMG that per patient showed mild neuropathy." *Id.* at 1631 (Ex. 30F8, 5/2/2018). There is no error in the ALJ's discussion of the EMG.

**B.     Remaining Arguments**

The Plaintiff makes two additional arguments in support of remand. First, the Plaintiff argues that substantial evidence does not support the ALJ's decision at step five regarding the necessity to alternate between sitting and standing and the jobs identified by the vocational expert. On remand, if the ALJ assesses the same RFC and the vocational expert identifies the same jobs, the ALJ will have an opportunity to specifically address this concern. Second, the

---

[1] In the decision, the ALJ cites Ex. "27F7," *see* AR 16; however, there is no page 7 in Exhibit 27. Rather, the neurologist describes the EMG at Exhibit 25F7, *see* AR 1526, and again at Exhibit 27F3, *see* AR 1543.

Plaintiff argues that his counsel was denied the opportunity to fully question the vocational expert. In light of the remand, this issue is moot.

C.  **Award of Benefits**

The Plaintiff asks the Court to reverse and remand for an award of benefits or, in the alternative, for further proceedings. Pl. Br. 24–25. An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005)). Based on the discussion above, an immediate award of benefits is not appropriate.

## CONCLUSION

For the reasons set forth above, the Court REVERSES the final decision of the Commissioner of the Social Security Administration and REMANDS this matter for further proceedings. The Court ADOPTS the Report and Recommendation of the United States Magistrate Judge [ECF No. 19] as to the background and legal standard and REJECTS and MODIFIES the findings as set forth in this Opinion and Order.

SO ORDERED on November 30, 2020.

> s/ Theresa L. Springmann
> JUDGE THERESA L. SPRINGMANN
> UNITED STATES DISTRICT COURT